IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TOMMY ROBISON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 13-06717 |
| v. ) | |
| ) | Judge Charles R. Norgle, Sr. |
| GREEN TREE SERVICING, LLC, ) | Magistrate Judge Daniel G. Martin |
| ) | |
| Defendant. ) | |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant, Green Tree Servicing, LLC ("Green Tree"), by its attorneys, submits this memorandum in support of its motion for summary judgment on the claims asserted in the Complaint of plaintiff, Tommy Robison ("Robison").

**I. Introduction**

Green Tree serviced two mortgages which were secured by Robison's house.[1] After Robison filed for bankruptcy, he did not advise Green Tree that he had moved out of his house and, indeed, did not move his furniture from the house. Accordingly, pursuant to Section 524(j) of the Bankruptcy Code, 11 U.S.C. § 524(j), Green Tree placed calls to Robison to determine whether Robison intended to keep the property (in which case Green Tree would be entitled to collect monthly payments from him). Those calls were not answered, leading to more unreturned calls. Green Tree actually had no conversations with Robison after the discharge and his house was ultimately sold at a foreclosure sale.

---

[1] See Local Rule 56.1 Statement of Uncontested Material Facts in Support of Defendant's Motion for Summary Judgment ("SOF") for a complete explication of the relevant undisputed facts.

In his Complaint[2], Robison alleges that Green Tree made numerous calls beginning "before [Robison] received his Chapter 7 discharge, in March 2012 and continu[ing] through September 2012" to "collect on the subject debt." (Complaint, ¶¶ 25, 27-28.) Robison has now filed a three-count Complaint against Green Tree based on Green Tree's phone calls to him.

In Count I, Robison asserts that Green Tree violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"). Green Tree's last attempt to contact Robison during the period at issue was on September 7, 2012, more than one year prior to Robison's filing of his FDCPA claim. Green Tree is therefore entitled to summary judgment on Count I because it is barred by the applicable one-year statute of limitations. 15 U.S.C. § 1692k(d).

In Count II, Robison asserts that Green Tree violated the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"), by "placing at least 100 phone calls to Plaintiff's cell phones … using [an Automatic Telephone Dialing System ("ATDS")]." (Complaint, ¶ 54, emphasis supplied.) Green Tree is entitled to summary judgment on Robison's claim in Count II because the undisputed facts show that *no* calls were placed to Robison's cell phone using an ATDS, an essential element of a claim under TCPA. Rather, all calls to Robison's cell phone were made manually by a Green Tree representative. Moreover, even if Green Tree's calls were made with an ATDS (which they were not), Robison consented to being called on his cell phone when he

---

[2] Robison also filed a Motion for Sanctions and Damages Against Green Tree Servicing, LLC Pursuant to 11 U.S.C. §§ 105, 524 and Fed. R. Bankr. P. 9020 for Violations of the Bankruptcy Discharge Injunction ("Contempt Motion"), in the case of *In Re: Tommy Robison*, Case No. 11-49448 in the Bankruptcy Court for the Northern District of Illinois. On November 1, 2013, this Court granted Green Tree's motion to withdraw the reference to the Bankruptcy Court with respect to the Contempt Motion, thereby bringing the Contempt Motion into this action. No briefing schedule has been set on the motion and the motion has not yet been ruled upon.

provided his cell phone number on his loan application and subsequent request for modification of his loan.

In Count III, Robison alleges that Green Tree violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/2, because Green Tree's alleged "demands for payment" were purportedly made with "the use of deception, fraud and false pretense in an effort to collect a debt that was not owed…." because it had been discharged in bankruptcy. (Complaint, ¶ 59.) In fact, there is no evidence that Green Tree made any misrepresentations or acted deceptively with Robison inasmuch as Green Tree *never spoke* with Robison after the discharge. Additionally, there is no evidence that Robison suffered any harm as a proximate result of Green Tree's alleged actions inasmuch as Robison made no payments to Green Tree in response to Green Tree's purported "demands for payment."

For these reasons, Green Tree is entitled to summary judgment on all claims asserted in Robison's Complaint.

## II. <u>Argument</u>

Rule 56 "mandates the entry of summary judgment … against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-33 (1986). The movant's "burden may be satisfied by presenting specific evidence on a particular issue or by pointing out 'an absence of evidence to support the non-moving party's case.'" *Puch v. Vill. of Glenwood*, No. 05 C 1114, 2008 U.S. Dist. LEXIS 76305 at *5 (N.D. Ill. Sept. 25, 2008) (citing *Celotex*). A mere scintilla of evidence is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to

rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). Under this standard, Green Tree is entitled to summary judgment on all of Robison's claims.

### A. Green Tree Is Entitled to Summary Judgment on Robison's Claim in Count I.

In Count I, Robison asserts that Green Tree violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692. An action brought under the FDCPA must be brought "within one year from the date on which the violation occurs." 15 U.S.C. §1692k(d).

Robison alleges that Green Tree made numerous calls beginning "before [Robison] received his Chapter 7 discharge, in March 2012 and continu[ing] through September 2012" to "collect on the subject debt." (Complaint, ¶¶ 25, 27-28.)

Robison filed his Complaint on September 18, 2013. Thus, any claim based on conduct occurring prior to September 18, 2012 is barred by the FDCPA's one-year statute of limitations. The record shows that Green Tree's last call to Robison during the period at issue was on September 7, 2012, when a Green Tree employee left a voicemail for him. (Local Rule 56.1 Statement of Uncontested Material Facts ("SOF"), ¶ 40.)

### B. Green Tree Is Entitled to Summary Judgment on Robison's Claim in Count II.

The Telephone Consumer Protection Act, 47 U.S.C. §227, prohibits calls to cell phones that are made using an ATDS without prior express consent. 47 U.S.C. § 227(b)(1)(A)(iii). In Count II, Robison contends that Green Tree's calls to his cell phone violated the TCPA. Green Tree is entitled to summary judgment on this claim for two independent reasons: (1) Green Tree did not call Robison using an ATDS; and (2) Robison gave his prior consent to the calls.

1. **Green Tree Did Not Call Robison's Cell Phone With an ATDS.**

It is undisputed that all of the calls that were made to Robison's cell phone were made manually by Green Tree's calling agents, not by an ATDS. (SOF, ¶ 39.)

An ATDS is defined in the TCPA as:

> equipment which has the capacity --
>
> (A)  to store or produce telephone numbers to be called, using a random or sequential number generator; and
>
> (B)  to dial such numbers.

47 U.S.C. §227(a)(1) (italics added). In 2008, the FCC issued a Declaratory Ruling regarding the use of ATDS technology that stated:

> The Commission noted that the evolution of the teleservices industry had progressed to the point where dialing lists of numbers was far more cost effective, but that the basic function of such dialing equipment, had not changed – *the capacity to dial numbers without human intervention….*

*See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Declaratory Ruling, 23 FCC Rcd. 559, 556 (F.C.C. Jan. 4, 2008) (emphasis supplied). Thus, courts have cited the FCC's reference to "human intervention" as a dispositive factor in determining whether an ATDS was used. See, *e.q.*, *Sterk v. Path, Inc.*, No. 13 C 2330, 2014 U.S. Dist. LEXIS 73507 at *14 (N.D. Ill. May 30, 2014) (Der Yeghiayan, J.) ("The FCC emphasized that the main requirement for an ATDS is…[the ability] to 'dial numbers without human intervention.'"); *Nunes v. Twitter, Inc.*, No. 14-cv-02843-VC, 2014 U.S. Dist. LEXIS 165846 at *4 (N.D. Ca. Nov. 26, 2014)(FCC's Ruling "appears to encompass any equipment that stores telephone numbers in a database and dials them without human intervention); *Jordan v. Nationstar Mortgage L.L.C.*, No. 14-cv-00787, 2014 U.S. Dist. LEXIS 148844 at *28 (N.D. Ca. Oct. 20, 2014) ("an ATDS operates without human intervention"); *Legg v. Voice Media Group, Inc.*, 20

6

F. Supp. 3d 1370, 1375 (S.D. Fla. 2014) ("the FCC clearly expressed that an ATDS is defined by 'the capacity to dial numbers without human intervention'…."). Here, it is undisputed that Green Tree's calls to Robison all required "human intervention" -- in each case, a calling agent manually initiated the call to Robison. (SOF, ¶¶ 27-39.)

Moreover, it is undisputed that the call center computers and phones used by Green Tree's callers simply do not meet the definition of an ATDS because they do not have software that would enable them to "store or produce telephone numbers to be called, using a random or sequential number generator…" 47 U.S.C. §227(a)(1). (SOF, ¶ 24.) The mere fact that Green Tree's calling agents used computers to call Robison does not mean those calls were made with an ATDS. See *Santos v. Millward Brown, Inc.*, No. 13-80670-CV-MARRA, 2014 U.S. Dist. LEXIS 88711 at *20 (S.D. Fla. June 30, 2014), holding:

> Under the TCPA, an autodialer is "equipment which has the capacity… to store or produce telephone numbers to be called, using a random or sequential number generator, and…to dial such numbers."… As other courts have held, the term "capacity" refers to "present, not potential, capacity" to produce and dial numbers…. For this reason, even sophisticated computer systems are not necessarily autodialers…. …[I]f autodialers included computers, then Defendant could argue for overbreadth [of the TCPA]. However, as of yet, no court, nor this one, will interpret the TCPA so broadly.

Nor does the fact that Green Tree's agents could, through their computers, theoretically have taken steps to sign on to Green Tree's predictive dialer ("Dialer") to participate in dialing campaigns magically convert those computers into an ATDS. *Dobbin v. Wells Fargo Auto Fin., Inc.*, 2011 U.S. Dist. LEXIS 63856 (N. D. Ill. June 14, 2011), is directly on point. In *Dobbin*, Wells Fargo made collection calls to Dobbin's cell phone. It was undisputed that Wells Fargo used a predictive dialer called the "Conversations System" to automatically make outgoing telephone calls and that the predictive dialer had the capacity to connect available call center

agents with successfully completed outbound calls. However, at the call center, the calling agent sat in a cubicle with a desk phone and a computer. The call center computers had a software program called Magellan through which the agent could log onto the universal server and be connected by the Conversations Systems to a successfully completed outbound call. However, an agent could also make outbound phone calls by manually dialing a phone number on his phone. The agent did not need to be logged into the server to make an outbound call.

The evidence showed that the calls at issue were made manually. Dobbin argued that "the TCPA prohibits even manually dialed calls to cell phones made 'using' 'equipment which has the capacity' to autodial." *Id.* at *10. Dobbin further argued that the desk phones were connected to the Conversations System, and thus had the requisite capacity to autodial.

The court granted summary judgment for Wells Fargo, holding:

> Plaintiffs concede, however, that Wells Fargo's agents' desk phones can also be used independently of its predictive dialing technology – that is, while a call center agent is not logged into the universal server. And plaintiffs do not suggest that the desk phones have any capacity to autodial on their own. The Court takes as true Snyder's statements that the agents' desk phones, including those apparently used to call plaintiffs, were physically connected to Wells Fargo's automatic dialing system and that the system is used in conjunction with such phones. Snyder's affidavit, however, does not establish a genuine issue of fact regarding whether manually dialed calls made from Wells Fargo call center desk phones are made "using" equipment with the capacity to autodial within the meaning of the TCPA.
>
> To summarize, there is no evidence that the calls to plaintiffs' cell phones were autodialed. Rather, the evidence is that the calls were dialed manually. Plaintiffs concede that the desk phones can be used independently of the predictive dialing technology and thus are not necessarily connected to the Conversations System when an agent manually dials a call. Plaintiffs have offered no evidence from which a reasonable jury could find that such a connection existed when the calls at issue here were made. Given these circumstances, no jury reasonably could find based on the evidence presented to the Court that Wells Fargo employees called plaintiffs' cell phones "using" equipment which has the capacity to autodial.

*Id.* at *11-13.

The same logic applies here. While Wells Fargo's callers apparently dialed their calls by hand and Green Tree's callers can dial by hand or click on a telephone number, that is a distinction without a difference – both required human intervention to initiate the call. The fact that Green Tree's calling agents could have theoretically taken steps to sign on to Green Tree's Dialer (if management had organized a Dialer campaign and directed the agents to participate in that campaign – see SOF, ¶ 33) does not mean that they called Robison's "cell phone 'using' equipment which has the capacity to autodial." *Id.*

See also, *Hunt v. 21st Mortg. Corp.*, No. 2:12-CV-2697-WMA, 2013 U.S. Dist. LEXIS 132574 at *11 (N.D. Ala. Sept. 17, 2013) ("The court therefore holds that, to meet the TCPA definition of an 'automatic telephone dialing system,' a system must have *a present capacity*, at the time the calls were being made, to store or produce and call numbers from a number generator."); *Gragg v. Orange Cab Co.,* 995 F. Supp.2d 1189, 1196 (W.D. Wash. 2014) ("Defendants' system, as presently configured, does not randomly or sequentially generate numbers… without human input. It is therefore incapable of performing as an ATDS. The mere fact that defendants' modem could, if paired with different software, develop the requisite capability is not enough under the TCPA...").

Thus, since all of the calls made to Robison's cell phone were made manually by Green Tree's calling agents (and not as part of any Dialer campaign) (SOF, ¶ 39), Green Tree is entitled to summary judgment on Robison's claim in Count II as a matter of law.

### 2. **Robison Consented to the Calls.**

Moreover, even if the manual calls were found to have been made with an ATDS and thus fall under the TCPA (which they do not), Robison gave consent to Green Tree calling him

9

when he provided his cell phone number to Green Tree on his original Uniform Residential Loan Application dated April 11, 2006, and again on his request for modification of his loan dated May 23, 2010. (SOF, ¶¶ 5, 7.)

The TCPA does not prohibit calls to cell phones "made with the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii). In a 2008 Declaratory Ruling, the FCC clarified that creditors and debt collectors are permitted to make non-emergency calls to cell phones using an ATDS. *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Declaratory Ruling, 23 FCC Rcd. 559, 564-65 (2008). The FCC concluded that credit customers give a creditor implicit prior express consent to call their cellular phone number using an ATDS if the consumer provided the telephone number to the creditor/debtor in connection with the debt at issue. *Id.* The FCC explained:

> Although the TCPA generally prohibits autodialed calls to wireless phones, it also provides an exception for autodialed and prerecorded message calls for emergency purposes or made with the prior express consent of the called party… The Commission concludes that the provision of a cell phone number to a creditor, *e.g.*, as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt.

*FCC Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 73 Fed. Reg. 6,041 (Feb. 1, 2008) (to be codified at 47 C.R.F. pt. 64); *see also,* 23 FCC Rcd. at 564-65 ("[Creditors] may use [automatic dialers] to call wireless phones, provided the wireless phone number was provided by the subscriber in connection with the existing debt…."). Thus, since the calls by Green Tree to Robison's cell phone were all made after he had provided his cell phone number as his contact number in conjunction with his loan application and request for modification, Robison consented to calls made to his cell phone. Accordingly, Green Tree is entitled to summary judgment on Count II as well.

10

### C. Green Tree Is Entitled to Summary Judgment on Robison's Claim in Count III.

In Count III, Robison asserts a claim pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/2, alleging that Green Tree's "demands for payment…represent[] the use of deception, fraud and false pretense in an attempt to collect a debt that was not owed at the time" because Robison had obtained a discharge in bankruptcy. (Complaint, ¶ 59.) To prove his claim under the ICFA, Robison must establish: (1) a deceptive act or practice by Green Tree; (2) Green Tree's intent that Robison rely on the deception; (3) the occurrence of the deception in the course of conduct involving trade or commerce; and (4) actual damage to Robison (5) proximately caused by the deception. *Powell v. Pentagon Fed. Credit Union*, No. 10 CV 785, 2010 U.S. Dist. LEXIS 97473 at *16 (N.D. Ill. Sept. 17, 2010). Signally, the Illinois Supreme Court has made clear that a claimant must prove that he was personally deceived or misled by the defendant's actions. *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 155 (2002).

Robison had no conversations with Robison after he filed for bankruptcy on December 8, 2011. (SOF, ¶ 26.) Thus, there is no evidence of "demands for payment" after the discharge, let alone evidence of "deception, fraud and false pretense in an attempt to collect a debt that was not owed at the time."

Moreover, there is no evidence that Robison "was personally deceived or misled" by anything that Green Tree said or did -- he did not make any payments to Green Tree after he filed for bankruptcy. (SOF, ¶¶ 9, 15.) Accordingly, Green Tree is entitled to summary judgment on Count III of Robison's Complaint.

## IV. Conclusion

For the reasons set forth above, the Court should enter summary judgment in favor of Green Tree and against Robison on all counts of his Complaint.

Respectfully submitted,

/s/ Marshall L. Blankenship
One of the attorneys for defendant, Green Tree Servicing, Inc.

James D. Adducci
Marshall L. Blankenship
ADDUCCI, DORF, LEHNER,
 MITCHELL & BLANKENSHIP, P.C.
150 North Michigan Avenue
Suite 2130
Chicago, IL 60601
(312) 781-2807

## **CERTIFICATE OF SERVICE**

      The undersigned, one of the attorneys for Defendant, certifies that on February 25, 2015, he caused a copy of the foregoing Memorandum in Support of Defendant's Motion for Summary Judgment to be served by ECF on:

>Mohammed Badwan, Esq.
>Matthew Hector, Esq.
>Daniel J. McGarry
>Mara A. Baltabols
>Sulaiman Law Group, Ltd.
>900 Jorie Boulevard, Suite 150
>Oak Brook, IL  60523

                                            /s/ Marshall L. Blankenship