**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TOMMY ROBISON, | ) | |
| | ) | |
| | ) | Case No. 1:14-cv-06717 |
| Plaintiff, | ) | |
| | ) | Judge Charles R. Norgle, Sr. |
| GREEN TREE SERVICING, LLC, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

NOW COMES Plaintiff, TOMMY ROBISON ("Robison"), by and through his counsel, Sulaiman Law Group, Ltd., responding to Green Tree's Motion For Summary Judgment as follows:

**INTRODUCTION**

Green Tree's Motion for Summary Judgment ("Green Tree's Motion") asserts that there are no issues of material fact as to Plaintiff's Telephone Consumer Protection Act ("TCPA"), Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), and Fair Debt Collection Practices Act ("FDCPA") claims. Green Tree's Motion requests that this Court ignore the plain language of the TCPA and overlook its unfair and deceptive practices in attempting to collect a discharged debt from Robison through a relentless harassment campaign against Robison, his girlfriend Melissa Waxler, and her father Colm McCarthy.

Green Tree does not dispute that 94 phone calls were placed to Robison's cellular phone from January 26, 2012 to September 7, 2012 relating to a debt that was discharged in bankruptcy. Given that the quantity of calls is not in dispute, Green Tree attempts to systematically attack Plaintiff's TCPA claim by denying the system it employed to place the

1

phone calls is an automatic telephone dialing system ("ATDS") under the TCPA. Unfortunately for Green Tree, and as explained below, the system it employed to place each phone call to Robison's cellular phone is an ATDS by any standard, or at the very least, whether it is an ATDS is an issue of material fact for the jury to decide. Realizing that its position as to the ATDS may fail, Green Tree shifts its focus on the consent issue. Again, Green Tree's effort must fail as Green Tree did not have consent to place calls to Robison's cellular phone as Robison filed for bankruptcy and conspicuously stated his intent to end his business relationship with Green Tree.

Green Tree's Motion then attempts to persuade this Court that it is entitled to summary judgment against Robison for his ICFA and FDCPA claims. Again, it asks the Court to ignore its harassment campaign against Robison, his girlfriend, and his girlfriend's father by disguising the campaign as an effort to determine Robison's "intent" on a property that he conspicuously surrendered in his bankruptcy filing. Unfortunately for Green Tree, the record as it stands today demonstrates that Green Tree should have ended all contact with Robison after he filed for bankruptcy. Instead, Green Tree unilaterally decided that it is exempt from the rules of the United States Bankruptcy Code, and commenced a vicious campaign to collect a discharged debt. For the reasons stated below, Green Tree's Motion should be denied in its entirety as a matter of law.

## LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P 56(c). The Court must draw all reasonable inferences in favor of the nonmovant. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir.2001). "In

considering a motion for summary judgment, this court is not required to scour the record in search of evidence to defeat the motion; the nonmoving party must identify with reasonable particularity the evidence upon which the party relies." *Pleniceanu v. Brown Printing Co.*, 2007 WL 781726, at *7 (N.D. Ill. 2007). "Summary judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Finally, the Court is "not required to draw every conceivable inference from the record." *McCoy v. Harrison*, 341 F.3d 600, 604 (7th Cir.2003).

## ARGUMENT

### I. Green Tree is Not Entitled to Summary Judgment on Robison's Count II TCPA Claim[1]

The TCPA makes it unlawful for a person to call the cellular telephone number of any person using an automatic telephone dialing system without the recipient's prior express consent. 47 U.S.C. §227(b)(1)(A)(iii). The TCPA defines "automatic telephone dialing system" as "equipment which has the *capacity* to (a) store or produce telephone numbers to be called, using a random or sequential number generator; and (b) to dial such number." 47 U.S.C. §227(a)(1). (emphasis added). "The purpose and history of the TCPA indicate that Congress was trying to prohibit the use of [automatic telephone dialing systems] to communicate with others by telephone in a manner that would be an invasion of privacy." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009). "The best way to interpret a statute is to look to its plain language because that is the most reliable indicator of congressional intent." *U.S. v. Boyles*, 57 F.3d 535 (7th Cir. 1995). "When a statute's language is clear, the text controls the interpretation thereof." *Jenkins v. Heintz*, 25 F.3d 536, 538 (7th Cir. 1994).

---

[1] Robison filed a Motion for Summary Judgment on his TCPA claim on March 2, 2015.

### a. The System Employed by Green Tree to Place Phone Calls to Robison is an ATDS as Defined by the TCPA.

Green Tree contends that it could not have violated the TCPA when placing phone calls to Robison because the system that it employed to place the phone calls required human intervention. Green Tree's position is nonsensical as "every ATDS requires some initial act of human agency--be it turning on the machine or pressing 'Go.'" *Johnson v. Yahoo! Inc.*, 2014 WL 7005102 at *5 (N.D. Ill. 2014). Aside from the logical fallacy of Green Tree's position, Green Tree's contention must fail as the TCPA only requires that the system employed to place the phone calls have the *capacity* to store and autodial numbers.

The clear language of the TCPA "mandates that the focus must be on whether the equipment has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator." *Satterfield*, 569 F.3d at 951 (9th Cir. 2009). "A system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the *capacity* to do it. *Id.* (emphasis added). *See also Hernandez v. Collection Bureau of America, Ltd.*, 2014 WL 4922379 at *3 (C.D. Cal. 2014)(adopting *Satterfield* and finding that an interface that was unable, by itself, to make auto-dialed calls was an ATDS because it had the capacity to be connected to a predictive dialing system). "The equipment used does not have to actually have made a call using a random or sequential number generator, and that it only needs the capacity to do so." *In re Rules & Regulations Implementing the TCPA*, 27 FCC Rcd. at 15391 n. 5.

Here, there is no dispute that Green Tree uses a predictive dialing system to contact its customers. (SOF ¶33.) "A predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists [the caller] in predicting when an [agent] will be available to take calls. The hardware, when paired with certain software, has the capacity to store

4

or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012). The Federal Communications Commission ("FCC") has determined that predictive dialing systems are a form of an automatic telephone dialing system. *Id*.

Here, it is undisputed that the "manual" calling method employed by Green Tree to make the calls to Robison consists of four components: (1) a live agent, (2) agent's computer which utilizes the UCSE software, (3) the server which stores the number, and (4) a telephone. (SOF ¶32.) Green Tree maintains that this method requires human intervention, and thus is not an ATDS as defined by the TCPA. Green Tree is mistaken as the TCPA only requires the system employed to place the phone calls to have the *capacity* to store and dial numbers. The system employed by Green Tree clearly has the *capacity* to store numbers and place auto-dialed calls, as the agent can log in to Green Tree's predictive dialing system through its USCE interface installed on the very same computer that was used to place the calls to Robison. (SOF ¶¶27-37; Robison's Response to SOF ¶28.) Given that Green Tree's predictive dialing system can be connected to a Green Tree agent's computer to achieve an auto-dialed call, it clearly has the capacity to store, produce, and dial numbers; rendering it an ATDS as defined by the TCPA.

Green Tree relies on *Sterk v. Path, Inc.,* 2014 WL 24434785 (N.D. Ill. 2014) to support its position that human intervention is a dispositive factor in determining whether a system is an ATDS for purposes of the TCPA. However, *Sterk* supports Robison's position as the court in *Sterk* granted summary judgment in favor of plaintiff and highlighted the fact that an ATDS only need to have the *capacity* to make a call using a random or sequential number generator. *Sterk,* 2014 WL 24434785 at *4. Consequently, Green Tree's reliance on *Sterk* misses the mark.

5

Green Tree next relies on *Nunes v. Twitter, Inc.*, 2014 WL 6708465 (N.D. Cal. 2014) to support its position that human intervention is a determining factor on whether a system is an ATDS for TCPA purposes. Again, Green Tree's reliance is misplaced because *Nunes* supports Robison's position as the *Nunes* court adopted the FCC's construction of Section 227(a)(1) of the TCPA to cover "any equipment with the *capacity* to 'generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists,' including 'hardware [that], when paired with certain software, has the *capacity* to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers'" in denying defendant's motion to dismiss plaintiff's TCPA claim. *Id.* at *1. (emphasis added).

Green Tree also relies on *Jordan v. Nationstar Mortgage LLC*, 2014 WL 5359000 (N.D. Cal. 2014) to support its position that human intervention is dispositive in determining whether a system is an ATDS. The *Jordan* court addressed a defendant's motion to stay the TCPA proceedings until the FCC clarified its definition of "capacity" and does not provide any support to Green Tree's theory.

Green Tree also cites *Legg v. Voice Media Group, Inc.*, 20 F.Supp. 3d 1370 (S.D. Fla. 2014) to advance its human intervention exclusion theory. The court in *Legg* denied plaintiff's motion for summary judgment on the basis that there was an issue of material fact of whether the subject system had the *capacity* to auto-dial numbers without human intervention. Consequently, *Legg* is inapposite as to any request for summary judgment, as the capacity issue was determined to be a question of fact. As a result, Green Tree's reliance on *Legg* must fail.

Green Tree then cites *Santos v. Millward Brown, Inc.,* 2014 WL 2938605 (S.D. Fla. 2014). However, Green Tree's reliance on *Santos* must also fail as it is not remotely on point.

Specifically, the court in *Santos* addressed the constitutionality of the TCPA, thus it misses the mark by a wide margin.

Finally, Green Tree cites to *Dobbin v. Wells Fargo Auto Fin., Inc.*, 2011 WL 244566 (N.D. Ill. 2011) and argues that human intervention excepts a system from the TCPA's definition of ATDS. The issue in *Dobbin* was similar to the facts in this case. In *Dobbin,* the plaintiff brought suit under the TCPA for defendant's phone calls to plaintiff's cellular phone.

The system employed by the defendant in *Dobbin* is similar to Green Tree's "manual" calling system. Specifically, the defendant's agent made calls from his desk and the computer system employed by the agent had the capability of being connected to the defendant's predictive dialing system. The defendant in *Dobbin* moved for summary judgment contending that its manual call method does not fall under the purview of an ATDS because it requires human intervention. In *Dobbin,* the court ultimately granted summary judgment in favor of the defendant because the plaintiffs failed to "provide any evidence that [defendant] called them using equipment that meets the statutory definition." *Dobbin,* 2011 WL 244566 at *4. The *Dobbin* court noted that plaintiffs offered no evidence that the equipment used had the "capacity" to autodial. The court rested its ruling on the fact that plaintiffs conceded that a manual call can be made without the agent being logged into the universal system.

Here, the opposite is true. Green Tree's agent, using the USCE interface, accessed information regarding the loan (including phone numbers when applicable) which is stored on the server. (SOF ¶¶28-30.) The manual dialing required four components: (a) live calling agent, (b) the agent's computer, (c) the server, and (d) a telephone. (SOF ¶32.) Given that the agent must login to the server to make the call, the system employed by Green Tree has the *capacity* to store and auto-dial numbers. As a result, *Dobbin* is distinguishable because the defendant in

*Dobbin* did *not* need to log in to the universal server, as the agent for Green Tree must, in order to place a manual call.

Green Tree's manual calling system is a sum of its components, and when the components are paired together, it has the capacity to store and auto-dial numbers as the system, when all components are connected, can connect to the predictive dialer system when prompted. (SOF ¶¶27-37, Robison's Response to SOF ¶28.) Given that a Green Tree agent can log in to the universal system and be connected to Green Tree's predictive dialing system on command, Green Tree's system has the *capacity* to store and auto-dial numbers. Consequently, Defendant is not entitled to summary judgment against Tommy for his TCPA claims. Ruling otherwise would effectively remove the term "capacity" from the TCPA.

**b. Green Tree Placed Calls to Robison Without His Consent**

Green Tree argues that even if its system is found to be an ATDS, it did not violate the TCPA because the calls placed to Robison were made with his consent, provided by Robison in his loan application and subsequent application for a loan modification. Consent is an affirmative defense under the TCPA in which the defendant bears the burden of establishing. *Toney v. Quality Resources, Inc.,* 2014 WL 6757978 at *3 (N.D. Ill. 2014); *see also Grant v. Capital Mgmt. Servs., LP.*, 449 Fed.Appx. 598, 600 n. 1 (9th Cir.2011); *Thrasher–Lyon v. Ill. Farmers Ins. Co.*, 861 F.Supp.2d 898, 905 (N.D. Ill. 2012). Although the TCPA does not define "prior express consent," Congress has delegated authority to the FCC to prescribe regulations that implement TCPA's provisions. *Olney v. Job.com, Inc.*, 2014 WL 1747674 at *4 (E.D.Cal. 2014)(citing 47 U.S.C. §227(b)(2)(f)). "Express consent is 'consent that is clearly and unmistakenably stated.'" *Satterfield*, 569 F.3d at 955 (9th Cir. 2009). "The FCC's interpretations

8

of TCPA are controlling unless invalidated by a court of appeals." *Olney*, 2014 WL 1747674 at *4 (E.D.Cal. 2014).

Persons who knowingly release their phone numbers have in effect given their invitations or permission to be called at that number which they have given, absent instructions to the contrary. *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C.R. 8752, 8769 (1992). Autodialed calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the "prior express consent" of the called party. In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 23 F.C.C.R. 559, 1 (2008). In such a case, "prior express consent is granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." *Id*. at 10. "The creditor bears the burden of proving prior express consent." *Id*.

The TCPA does not address whether or how prior express consent to receive autodialer calls may be revoked once given. *Beal v. Wyndham Vacation Resorts, Inc.*, 956 F.Supp.2d 962, 976 (W.D. Wisc. 2013). Judge Zagel from this district along with most courts have concluded that consent can be revoked. *Sengenberger v. Credit Control Services, Inc*., 2010 WL 1791270 at *4 (N.D. Ill. 2010), *Starkey v. Firstsource Advantage, LLC*, 2010 WL 2541756 at *5-6 (W.D. N.Y. 2010), *Cunningham v. Credit Management, L.P.*, 2010 WL 3791104 at *5 (N.D. Tex. 2010), *Moore v. Firstsource Advantage, LLC*, 2011 WL 4345703 at *11 (W.D. N.Y. 2011), *Moltz v. Firstsource Advantage, LLC*, 2011 WL 3360010 at *6 (W.D. N.Y. 2011). Other courts have concluded that consent may be revoked orally or in writing. *Gutierrez v. Barclays Group*, 2011 WL 579238 at *3-4 (S.D. Cal. 2011), *Adamcik v. Credit Control Services*, 852 F.Supp.2d 744,748 (W.D. Tex. 2011). Finally, a minority of the courts have concluded that consent cannot

9

be revoked after it is provided. *Saunders v. NCO Financial Systems, Inc*., 910 F.Supp.2d 464, 469-70 (E.D. N.Y. 2012), *Gager v. Dell Financial Services, LLC*, 2012 WL 1942079 at *4-5 (M.D. Pa. 2012).

Here, Robison did *initially* consent to Green Tree calling his cellular phone when he applied for the loan and subsequent loan modification. However, Robison subsequently revoked his consent when he (1) filed for bankruptcy and (2) demanded that Green Tree stop calling him during phone calls initiated by Green Tree. (SOF ¶15, Robison's Response to SOF¶¶15, 17, 20, 23.). This court should adopt the holdings in *Beal*, *Sengenberger*, *Starkey*, *Cunningham*, *Moore*, and *Moltz* and find that consent can be revoked once provided. Specifically, this Court should adopt the reasoning in *Beal* that "under traditional notions of consent, revocation is sufficient so long as the actor 'knows or has reason to know that the other is no longer willing for him to continue the particular conduct.'" *Beal*, 956 F.Supp.2d at 979 (W.D. Wisc. 2013).

Moreover, Green Tree's own business records *expressly* state it had no authority to contact Robison. (SOF, Exhibit B, Exhibit 1, entry dated January 10, 2012 at 8.27.52, Robison Response to SOF, Exhibit B, entry dated January 10, 2012 at 8.27.52.) Green Tree's position that it had consent to call Robison is disingenuous and conflicts with its own business records.

If seeking bankruptcy protection is insufficient to revoke consent, then it would lead to absurd results as creditors would be free to perpetually use the telephone system to harass consumers without impunity. Holding that Green Tree's conduct was lawful under the TCPA would fly in the face of the spirit of the TCPA's goal in deterring collectors from communicating with debtors in a manner that would be an invasion of privacy. *Satterfield*, 569 F.3d at 954 (9th Cir. 2009). At the very least, there is an issue of material fact as to Robison's consent, in which

Green Tree bears the burden of establishing, thus precluding summary judgment in Green Tree's favor.

## II. Green Tree is not entitled to Summary Judgment on Robison's ICFA Claim

### a. Green Tree's Phone Calls Were Deceptive and Unfair under ICFA

ICFA was legislated to prevent the very same harassing conduct committed by Green Tree. "The ICFA is a regulatory and remedial statute to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive practices." *Siegal v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010). "The elements of a claim under the ICFA are: (1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 574 (7th Cir. 2012). "A practice is deemed 'unfair' for ICFA purposes based upon factors such as (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscurpulous; or (3) whether it causes substantial injury to consumers." *Aker v. Bureaus Investment Group Portfolio No. 15 LLC*, 2014 WL 4815366 at *6 (N.D. Ill. 2014).

Green Tree argues that it is entitled to summary judgment against Robison for his ICFA claim because Robison had no conversations with Green Tree after he filed for bankruptcy. This is false. Robison, Melissa Waxler, and Colm McCarthy all testified that they had conversations with Green Tree after Robison filed for bankruptcy. (Robison's Response to SOF¶¶17, 23, 26.) Assuming, *arguendo,* that no conversations took place after Robison filed for bankruptcy, Green Tree's position would still be nonsensical as it conditions ICFA liability not on the harmful conduct, but how the victim reacted to the same.

Here, Green Tree placed over 94 calls to Robison, Melissa Waxler, and Colm McCarthy in relation to a debt that was discharged in Robison's bankruptcy. (SOF, Exhibit B, Exhibit 1 attached thereto, pgs. 1-23, Robison Response to SOF, Exhibit B, pgs. 1-23.) The only reasonable interpretation of the excessive phone calls in relation to the discharged debt was to coerce Robison into paying a debt he no longer owed. Green Tree went as far as calling Robison's girlfriend and her father to coerce and shame Robison into paying a debt that he had no legal obligation to pay.

Green Tree attempts to justify its excessive harassing calls to Robison, his girlfriend, and his girlfriend's father under the premise that it was calling to ascertain Robison's "intent" in regard to the property it held a security interest in. However, Green Tree knew Robison's intent as it was expressly stated in his bankruptcy schedules. (Robison Response to SOF, Exhibit D.) Nonetheless, Green Tree wants to stick to its guns and assert its "intent" theory. Unfortunately for Green Tree, its "intent" theory was rejected in *In re Otero*, 498 B.R. 313 (Bankr.D.N.M.2013). In *Otero*, Green Tree called a discharged debtor 134 times to determine "intent." The Court held that Green Tree's "intent" position "loses plausibility. There were much easier, less coercive ways to determine Plaintiff's 'intent' and enforce [its] lien rights." *Id*. at 320. The Court went on to state:

> "Defendant's [Green Tree] actions in October, 2012 are particularly egregious. Defendant should have sent its notice of default/right to cure letter in early October, and followed up any failure to cure by exercising its state law remedy to repossess the mobile home. There is no possible justification for calling Plaintiff [debtor] and her friends, neighbors, and relatives 134 times, leaving 60 messages. Defendant's [Green Tree] actions make it clear that it had little or no interest in the mobile home, and believed its chances of recovery were much better if it hounded Plaintiff [debtor] to make 'voluntary payments.' Defendant's activity also violated its own procedures. Defendant's procedure manual called for a maximum of one contact a month. Even this rate of contact likely is too frequent if the borrower is current on the voluntary payments, but in any event the limit was exceeded by Defendant 133 times in October, 2012. Defendant's argument that repeated calls and voicemails are not 'contacts' is unpersuasive, given the targets (skip-traced family, friends, and neighbors), volume, and tenor of the calls and messages. Further, whether or not they

are 'contacts' as Defendant would define that term, they are prohibited dunning calls." *Id*. at 321.

Green Tree attempts to justify its harassment campaign against Robison and defeat ICFA liability under the same rejected theory as it employed in *Otero*. Whether Green Tree's harassment campaign violates ICFA is at least an issue of material fact for the jury to decide. Consequently, Green Tree is not entitled to summary judgment on Robison's ICFA claim.

### III. Green Tree is Not Entitled to Summary Judgment on Robison's FDCPA Count

Green Tree argues that it is entitled to summary judgment on Robison's FDCPA claim because a portion of the record shows that the last call placed by Green Tree was on September 7, 2012. Although most of the conduct committed by Green Tree is outside the one year statute of limitations, Melissa Waxler testified that she was receiving calls from Green Tree as late as 30 days from the sheriff's sale that took place on October 4, 2012. (Robison Response to SOF ¶ 39.) Given that there is an issue of material fact as to when the last call by Green Tree was made, Green Tree is not entitled to summary judgment on Robison's FDCPA claim.

### CONCLUSION

Green Tree systematically harassed Robison, Melissa Waxler, and Colm McCarthy over a span of 10 months in an attempt to collect a discharged debt. Green Tree's manual dialing system employed in furtherance of its harassment campaign is an ATDS as defined by the plain language of the TCPA because it has the *capacity* to store and dial numbers. At the very least, the record presents an issue of material fact of whether the system employed by Green Tree has the *capacity* to store and dial numbers. Furthermore, the record as it stands at least creates an issue of material fact of whether Green Tree's harassment campaign violates ICFA and the FDCPA. Consequently, this Honorable Court should deny Green Tree's Motion in its entirety as a matter of law.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court deny Defendant's Motion for Summary Judgment and grant any other relief that this Honorable Court deems just.

                                               Respectfully submitted,

                                               /s/ Mohammed O. Badwan
                                               Mohammed O. Badwan
                                               ARDC#6299011
                                               *Counsel for Plaintiff*
                                               Sulaiman Law Group, Ltd.
                                               900 Jorie Boulevard, Suite 150
                                               Oak Brook, Illinois 60523
                                               (630) 575-8181
                                               mbadwan@sulaimanlaw.com

## **CERTIFICATE OF SERVICE**

      The undersigned, one of the attorneys for Plaintiff, certifies that on March 23, 2015, he caused a copy of the foregoing Plaintiff's Response to Green Tree's Motion for Summary Judgment to be served by ECF on:

Marshall Blankenship, Esq.
James Adducci, Esq.
ADDUCCI, DORF, LEHNER,
MITCHELL & BLANKENSHIP, P.C

                                            /s/ Mohammed O. Badwan