CMC

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TOMMY ROBINSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>GREEN TREE SERVICING, LLC, )<br>)<br>Defendant. ) | No. 13 CV 6717<br><br>Hon. Charles R. Norgle |

**OPINION AND ORDER**

Plaintiff Tommy Robinson ("Plaintiff") sues Defendant Green Tree Servicing, LLC ("Defendant") for violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* (Count I); violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 (Count II); and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/10a (Count III). On February 25, 2015, Defendant filed a motion for summary judgment on all three counts, and on March 3, 2015, Plaintiff filed a partial motion for summary judgment on Count II. The motions are fully briefed and before the Court. For the followings reasons, both motions are denied.

**I. BACKGROUND[1]**

Defendant serviced two mortgages secured by Plaintiff's residence located in Elgin, Illinois. Plaintiff stopped making payments on the mortgages in June of 2011. Defendant filed an action to foreclose in August of 2011. On December 8, 2011, Plaintiff filed for bankruptcy, and indicated that he intended to surrender the property. The foreclosure action was

---

[1] The Court takes the undisputed facts from the parties' Local Rule 56.1 statements and notes disputed facts within the text.

automatically stayed by Plaintiff's bankruptcy filing, and once the stay was lifted in January of 2012, the property was eventually sold at a foreclosure sale in October of 2012.

The bankruptcy court granted Plaintiff a discharge on March 26, 2012. Plaintiff alleges that after he was granted a discharge, Defendant placed approximately 100 calls to him from March of 2012 through September of 2012 in an attempt to collect on the debt. Defendant admits to placing the calls, but argues that the calls were made in order to ascertain whether Plaintiff intended to keep the property, not in an attempt to collect on the debt. Although Plaintiff claimed at his deposition that he answered approximately ten to twenty of the calls, Defendant's records indicate that none of the calls were answered.

Defendant further alleges that, although Plaintiff originally expressed his intent to surrender the property during the bankruptcy proceedings, inspections of the property conducted on February 3, 2012, March 27, 2012, July 10, 2012, August 11, 2012, and September 8, 2012, showed that the property appeared to be occupied, as the house remained fully furnished and cars were parked in the driveway. Plaintiff admits that the inspections showed that the property appeared to be occupied. Nevertheless, Plaintiff argues that Defendant knew that he had vacated the property because he indicated his intent to surrender it on the bankruptcy schedules and proceedings, and he listed a different address from the subject property on the bankruptcy papers. Plaintiff alleges that Defendant's calls attempting to collect on the debt between March 2012 and September 2012, despite his discharge in bankruptcy, violated the FDCPA, the TCPA, and the ICFA.

## II. DISCUSSION

### A. Standard of Decision

"Summary judgment is appropriate only 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Advance Cable Co., LLC v. Cincinnati Ins. Co., LLC, Nos. 14-2620 & 14-2748, 2015 U.S. App. LEXIS 9805, at *5-6 (7th Cir. June 11, 2015) (quoting Fed. R. Civ. P. 56(a)). "A fact is 'material' if it is one identified by the law as affecting the outcome of the case. An issue of material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Hess v. Bresney, 784 F.3d 1154, 1158 (7th Cir. 2015) (internal quotation marks and citations omitted). The Court views the evidence and draws all reasonable inferences in the light most favorable to the nonmoving party. Id.; see also Advance Cable Co., LLC, 2015 U.S. App. LEXIS 9805, at *5 ("In reviewing cross-motions for summary judgment, we take the motions one at a time and then, as usual, construe all facts and draw all reasonable inferences in favor of the non-moving party.").

### B. Motions for Summary Judgment

#### *1. Defendant's Motion for Summary Judgment on Count I*

First, Defendant argues that it is entitled to judgment as a matter of law on Count I because none of the conduct occurred within the one-year period of limitation set out in the FDCPA. The FDCPA provides that "[a]n action to enforce any liability created by this title [15 U.S.C. §§ 1692 *et seq.*] may be brought in any appropriate United States district court . . . or in any other court of competent jurisdiction, within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d).

Plaintiff filed his Complaint on September 18, 2013. Thus, only conduct that occurred on September 18, 2012 and later would be actionable under the statute. Defendant argues that its records show that the last call that it made to Plaintiff was on September 7, 2012, when it left a voicemail. Plaintiff, however, argues that his girlfriend, Melissa Waxler ("Waxler"), who was authorized to talk to Defendant, testified at her deposition that she recalled receiving a call from Defendant approximately thirty days after the October 4, 2012 sheriff's sale of the property. Viewing the facts in a light most favorable to Plaintiff, Waxler's testimony that she received a call in October or November of 2012, within the period of limitations, creates a genuine issue of material fact as to whether any conduct occurred within the statute of limitations. Accordingly, Defendant's motion for summary judgment on Count I is denied.

### 2. *Cross-Motions for Summary Judgment on Count II*

Next, both parties move for summary judgment on the alleged TCPA violation contained in Count II. The TCPA makes it unlawful to call a person's cellphone without prior express consent "using any automatic telephone dialing system [("ATDS")] or an artificial or prerecorded voice." 47 U.S.C. § 227(b)(1)(A)(iii). Defendant argues that it is entitled to judgment as a matter of law on this claim because the undisputed facts show that Defendant did not call Plaintiff using an ATDS and, in any event, it had Plaintiff's prior express consent to call his cellphone. Plaintiff argues that he is entitled to judgment as a matter of law because, while each call he received was made manually by a representative of Defendant, the equipment used by Defendant's call center employees had the capacity to connect to a predictive dialer or ATDS, and therefore violated the TCPA. Additionally, Plaintiff argues that he tacitly revoked his consent by filing for bankruptcy, and that he allegedly orally revoked his consent during the various phone calls.

4

### a. Consent

On the issue of consent, it is undisputed that Plaintiff initially gave his express consent to Defendant to call his cellphone when he provided his cellphone number as the contact number on his mortgage documents. Defendant contends that this consent cannot be revoked, or, if it can, then at a minimum, it must be revoked in writing, which Plaintiff did not do. Plaintiff avers that by filing for bankruptcy, and indicating that he intended to surrender the property, he provided written notice to Defendant of his revocation of consent to be called on his cellphone. However, while Plaintiff informed the bankruptcy court that he intended to surrender the property, later inspections performed by agents of Defendant showed that the property was still occupied. Plaintiff maintains that, despite what the inspections showed, he had vacated the property. Because there is a genuine issue of material fact as to whether Plaintiff vacated the premise and communicated that decision to Defendant, summary judgment based on this argument is inappropriate.

Plaintiff also argues that he told representatives of Defendant when they called that he did not want to be called on his cellphone any longer. As discussed above, Plaintiff testified at his deposition that he answered ten to twenty of the phone calls, but Defendant's records indicate that no calls were answered, and therefore, an oral revocation could not have occurred. This too remains a dispute of material fact. Accordingly, Plaintiff's and Defendant's motions for summary judgment on the TCPA claim based on consent, or lack thereof, are denied.

### b. ATDS

With respect to Defendant's use of an ATDS, it is undisputed that during the relevant time period, Defendant used two different methods to call its customers: (1) calls made manually by a representative of Defendant at one of its call centers, and (2) calls made by Defendant's

5

predictive dialing system, an ATDS. When making a manual phone call about a specific loan, call center employees use a custom-built account user interface known as the "UCSe interface" to access information, including phone numbers relevant to that loan. The information from that interface is stored on a server located in St. Paul, Minnesota. After reviewing the information on the interface, if the agent determined that a call needed to be made, he or she would dial the number on the desk phone, using a keypad on the computer, or by clicking on the phone number on the computer.

When making calls using the predictive dialing system, Defendant used a dialer known as the Aspect Unified IP Version 6.6 Service Pack 2 (the "Dialer"). The Dialer operated using a combination of hardware and software located in Tempe, Arizona and St. Paul, Minnesota, which was separate from the server used for the UCSe interface. Dialer campaigns could only be initiated by a regional manager. Defendant's employees would determine what criteria to use to choose the phone numbers, and then the phone numbers selected would be transferred from the UCSe server to the Dialer. Employees would then log onto the Dialer, which transferred calls to the phones of available agents once it detected that a live person had answered the call. Regular call center employees could not set up Dialer campaigns from their computers, and to participate in one, the employees had to log onto the Dialer from their computer.

It is undisputed that Defendant did not make any calls to Plaintiff using the Dialer. All calls to Plaintiff were made manually by a call center employee. Thus, Defendant argues that it is entitled to summary judgment on Plaintiff's TCPA claim. In opposition to Defendant's motion for summary judgment and in support of its own motion, Plaintiff argues that the calls nevertheless fall under the statute because the UCSe interface, which stores customer

information used when making manual calls, is <u>capable</u> of working with the Dialer (by providing the telephone numbers) to make a call, and therefore is considered an ATDS under the TCPA.

The TCPA defines an ATDS as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). According to the Federal Communications Commission:

> [T]his definition covers any equipment that has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists. . . . The Commission has, for example, concluded that the scope of that definition encompasses hardware that, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers, in light of, among other things, its conclusion that the purpose of the requirement that equipment have the capacity to store or produce telephone numbers to be called is to ensure that the prohibition on autodialed calls not be circumvented.

<u>In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991</u>, 27 FCC Rcd. 15391, 15392 n.5 (Nov. 29, 2012) (internal quotation marks and citations omitted). Because the server for the UCSe interface has the capacity of working with the Dialer, Plaintiff argues that the use of the server, even without logging onto the Dialer, is considered an ATDS. <u>See</u> <u>Satterfield v. Simon & Schuster, Inc.</u>, 569 F.3d 946, 951 (9th Cir. 2009) ("[A] system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it.").

In opposition to Plaintiff's motion for summary judgment, however, Defendant argues that the computers and telephones used by the call center employees did not have the capacity to function as an ATDS because they did not alone have the software or hardware necessary to store or produce telephone numbers to be called using a random or sequential number generator. In order to call using a predictive dialer, call center employees would have to separately log onto

7

Defendant's Dialer. Defendant further argues that none of the manual calls made to Plaintiff were accomplished while the call center employees were logged onto the Dialer. There is a genuine issue of material fact with respect to whether any calls were made using equipment which had the requisite capacity to act as an ATDS as defined by the TCPA. Accordingly, both motions for summary judgment on this count are denied.

### 3. Defendant's Motion for Summary Judgment on Count III

Lastly, Defendant argues that it is entitled to summary judgment on Plaintiff's ICFA claim contained in Count III. To prove a cause of action under the ICFA, a plaintiff must establish: "'(1) a deceptive or unfair act or promise by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) that the unfair or deceptive practice occurred during a course of conduct involving trade or commerce.'" Camasta v. Jos. A. Bank Clothiers, Inc., 761 F.3d 732, 739 (7th Cir. 2014) (quoting Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547, 574 (7th Cir. 2012)).

Defendant argues that, because Plaintiff did not answer any of the phone calls, no improper demands could have been made, and thus, Plaintiff fails to show any deceptive act or practice by Defendant. As discussed above, however, there is a genuine issue of material fact as to whether Plaintiff answered ten to twenty of the phone calls during which he alleges that Defendant demanded payment on the discharged debt. Therefore, summary judgment is improper on this claim.

## III. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is denied, and Plaintiff's partial motion for summary judgment is denied.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: June 26, 2015